IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
GREENVILLE DIVISION

| | |
|---|---|
| Robert Auray Jr. & Marion Auray, )<br>by Chubb Indemnity Insurance Company, )<br>Subrogee, )<br>   ) <br>                    Plaintiffs,   )<br>   )<br>          vs.       )<br>   )<br>Delivery by Delivery, Inc. and SGT Auto )<br>Transport Corp., )<br>   )<br>                    Defendants.   ) | C.A. No.  6:23-03155-HMH<br><br>**ORDER & OPINION** |

Before the court is Defendant SGT Auto Transport Corp.'s ("SGT") motion to dismiss Plaintiff Chubb Indemnity Insurance Company's ("Chubb Indemnity") amended complaint. For the reasons below, the court grants in part and denies in part SGT's motion.

**I. BACKGROUND**

In May 2021, Robert and Marion Auray contracted with SGT and Delivery by Delivery, Inc. ("Delivery") to transport their 2018 Bentley SUV from Arizona to Pennsylvania. (Am. Compl. ¶¶ 12, 16, ECF No. 9.)  When the couple received their vehicle, "it had sustained significant damage and was deemed a total loss." (Id. ¶ 20, ECF No. 9.)  Chubb Indemnity, as the couple's subrogee, now brings this action against SGT and Delivery to recover the $167,718.15 it paid to the couple for damages sustained to the vehicle. (Id. ¶¶ 10-11, ECF No. 9.)

On August 7, 2023, SGT moved to dismiss the amended complaint under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim. (Mot. Dismiss, ECF No. 12.)  Chubb Indemnity responded in opposition on August 21, 2023. (Resp. Opp'n, ECF No. 16.)  SGT then

1

filed its reply on August 28, 2023. (Reply, ECF No. 17.) This matter is now ripe for consideration.

## II. LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(6) allows a party to move to dismiss a complaint for "failure to state a claim upon which relief can be granted." "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). This plausibility standard is met "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. (citing Twombly, 550 U.S. at 556). "'[D]etailed factual allegations'" are not required, but the plaintiff must present "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." Id. (quoting Twombly, 550 U.S. at 555). In reviewing the complaint, the court "must accept the factual allegations of the complaint as true and construe them in the light most favorable to the nonmoving party." Rockville Cars, LLC v. City of Rockville, 891 F.3d 141, 145 (4th Cir. 2018).

## III. DISCUSSION

The amended complaint asserts three claims against SGT: (1) violation of the Carmack Amendment, 49 U.S.C. § 14706(a)(1); (2) violation of the Interstate Commerce Commission Termination Act, 49 U.S.C. § 14704(a)(2), (e); and (3) breach of contract. The court will address each count in turn.

## A. Carmack Amendment

SGT argues that Count I should be dismissed because it acted as a broker – and not a carrier – with respect to the shipment of the Auray's vehicle. (SGT's Mem. Supp. Mot. Dismiss 3-4, ECF No. 12-1.) Chubb Indemnity responds that it has plausibly alleged that SGT was operating as a carrier at the time and is thus subject to liability under the Carmack Amendment. (Resp. Opp'n 5, ECF No. 16.)

The Carmack Amendment "create[s] a national scheme of carrier liability for goods damaged or lost during interstate shipment under a valid bill of lading." Shao v. Link Cargo (Taiwan) Ltd., 986 F.2d 700, 704 (4th Cir. 1993). The Amendment provides in relevant part:

> A carrier providing transportation or service . . . shall issue a receipt or bill of lading for property it receives for transportation . . . . That carrier and any other carrier that delivers the property and is providing transportation or service . . . are liable to the person entitled to recover under the receipt or bill of lading. The liability imposed under this paragraph is for the actual loss or injury to the property caused by (A) the receiving carrier, (B) the delivering carrier, or (C) another carrier over whose line or route the property is transported in the United States . . . .

49 U.S.C. § 14706(a)(1). The definition of "carrier" includes a "motor carrier," which is defined as "a person providing motor vehicle transportation for compensation." Id. § 13102(3), (14).

In contrast, a "broker" means "a person, other than a motor carrier . . . , that as a principal or agent sells, offers for sale, negotiates for, or holds itself out by solicitation, advertisement, or otherwise as selling, providing, or arranging for, transportation by motor carrier for compensation." Id. § 13102(2) (emphasis added). As reflected by this language, Carmack Amendment liability extends to carriers but not brokers. See, e.g., Ortiz v. Ben Strong Trucking, Inc., 624 F. Supp. 3d 567, 580 n.4 (D. Md. 2022); Essex, Ins. Co. v. Barrett Moving & Storage, Inc., 885 F.3d 1292, 1300 (11th Cir. 2018); AIG Eur. (Neth.), N.V. v. UPS Supply Chain Sols., Inc., 765 F. Supp. 2d 472, 482-83 (S.D.N.Y. 2011).

Though the difference between a broker and a carrier is often "a blurry one,"[1] the key question is "whether the disputed party accepted legal responsibility to transport the shipment." Essex Ins. Co., 885 F.3d at 1300-01 (emphasis removed); Tryg Ins. v. C.H. Robinson Worldwide, Inc., 767 F. App'x 284, 286-87 (3d Cir. 2019) (unpublished); CGU Int'l Ins., PLC v. Keystone Lines Corp., No. C-02-3751 SC, 2004 WL 1047982, at *2 (N.D. Cal. May 5, 2000) (unpublished). Consistent with this approach, an entity that "accepted responsibility for ensuring delivery of the goods" qualifies as a carrier, even if another entity actually transported the goods. Keystone Lines, 2004 WL 1047982, at *2; Essex Ins. Co., 885 F.3d at 1301 ("[W]hen a party holds itself out as the party responsible for the care and delivery of another's property, it cannot outsource its contractual responsibility by outsourcing the care and delivery it agreed to provide."). Conversely, if the entity "merely agreed to locate and hire a third party to transport the [goods], then it was acting as a broker." Keystone Lines, 2004 WL 1047982, at *2.

In moving to dismiss, SGT highlights two terms in a Shipping Order Form signed by Marion Auray that, in its view, "conclusively establish that SGT . . . did not operate as a motor carrier" in connection with the vehicle.[2] (SGT's Mem. Supp. Mot. Dismiss 3, ECF No. 12-1.) The first term specifies that SGT is a "registered and bonded property broker" with the Department of Transportation. (Mot. Dismiss Ex. A (Shipping Order Form 2), ECF No. 12-2.) The second term states that "Customer agrees that SGT Auto Transport Corp. is not liable for

---

[1] "It is frequent for shipping companies . . . to provide transportation via their own trucks and drivers for some shipments and serve as intermediaries that link shippers . . . with other carriers for other shipments, sometimes with regard to the same order." Essex Ins. Co., 885 F.3d at 1300.

[2] The court may consider the Shipping Order Form without converting SGT's motion into one for summary judgment. See Harrell v. Freedom Mortg. Corp., 976 F.3d 434, 439 n.5 (4th Cir. 2020) ("A court may consider a document attached to a motion to dismiss if that document was integral to and explicitly relied on in the complaint and if its authenticity is not challenged." (internal quotation marks omitted)).

any property damage claims to Customer's vehicle and that his, her or its sole remedy is against the Carrier only." (Id. Ex. A (Shipping Order Form 2), ECF No. 12-2.)

When viewed in isolation, these terms could be interpreted to mean that an entity other than SGT was responsible for transporting the vehicle. However, the fact that an entity is registered as a broker is not dispositive of its "true identity." Phoenix Assur. Co. v. K-Mart Corp., 977 F. Supp. 319, 326 (D.N.J. 1997); Hewlett-Packard Co. v. Brother's Trucking Enters., Inc., 373 F. Supp. 2d 1349, 1352 (S.D. Fla. 2005) ("Whether a company is a broker or a carrier is not determined by what the company labels itself, but by how it represents itself to the world and its relationship to the shipper."). Moreover, the Shipping Order Form also states that the agreement "allows SGT Auto Transport Corp. to contract with another licensed and insured Motor Carrier(s) to transport the vehicle(s) described in this shipping order." (Mot. Dismiss Ex. A (Shipping Order Form 2), ECF No. 12-2) (emphasis added). The use of the word "another" in this context implies that SGT was itself a "licensed and insured Motor Carrier[]." See Another, Merriam-Webster Online Dictionary, https://www.merriam-webster.com/dictionary/another (last visited Aug. 29, 2023) (defining "another" as "being one more in addition to one or more of the same kind"). Chubb Indemnity insists that this language led the Aurays to believe that SGT and Delivery were both acting as motor carriers. (Resp. Opp'n 5, ECF No. 16.)

Given these ambiguities, and considering that "the carrier/broker inquiry is inherently fact-intensive," Nipponkoa Ins. Co. v. C.H. Robinson Worldwide, Inc., No. 09 Civ. 2365(PGG), 2011 WL 671747, *5 (S.D.N.Y. Feb. 18, 2011) (unpublished), the court is unable to determine at the motion-to-dismiss stage whether SGT's role in this transaction was limited to that of a broker. Accordingly, SGT's motion to dismiss Chubb Indemnity's Carmack Amendment claim is denied.

**B. Section 14704(a)(2)**

Next, SGT argues that Count II should be dismissed because § 14704(a)(2) "does not establish a private right of action for violations of the [Federal Motor Carrier Safety Regulations]." (SGT's Mem. Supp. Mot. Dismiss 5, ECF No. 12-1.)

Section 14704(a)(2) provides that "[a] carrier or broker providing transportation or service subject to jurisdiction under chapter 135 is liable for damages sustained by a person as a result of an act or omission of that carrier or broker in violation of this part."[3] Contrary to SGT's assertion, courts have recognized that "§ 14704(a)(2) creates a private cause of action for violations of the [Motor Carrier Act] and its attendant regulations." Fulfillment Servs., Inc. v. United Parcel Serv., Inc., 528 F.3d 614, 620 (9th Cir. 2008); Owner-Operator Indep. Drivers Ass'n v. New Prime, Inc., 192 F.3d 778, 785 (8th Cir. 1999); Stewart v. Mitchell Transp., 241 F. Supp. 2d 1216, 1221 (D. Kan. 2002). The text of § 14704(a)(2), however, limits a carrier's or broker's liability to damages caused by a violation of Part B of Subtitle IV of Title 49 of the United States Code. See Starr Indem. & Liab. Co. v. YRC, Inc., No. 15-cv-6902, 2018 WL 6790487, at *3 (N.D. Ill. Dec. 26, 2018) (unpublished). "Thus, to state a claim under § 14704(a), [a] [p]laintiff must point to a violation of Part B of Subtitle IV or regulations promulgated thereunder." Id.

Here, Chubb Indemnity relies on 49 C.F.R. § 398.4(g)(1). That regulation provides that "[n]o motor vehicle shall be driven nor shall any motor carrier permit or require any motor vehicle to be driven if it is so loaded, or if the load thereon is so improperly distributed or so

---

[3] Section 14704(e) provides that "[t]he district court shall award a reasonable attorney's fee under this section." 49 U.S.C. § 14704(e).

6

inadequately secured, as to prevent its safe operation."[4]  49 C.F.R. § 398.4(g)(1).  Regardless, however, of whether this regulation was in fact promulgated under Part B of Subtitle IV, see generally Starr Indem., 2018 WL 6790487, at *3-6, Chubb Indemnity's § 14704(a)(2) claim fails because SGT is not a covered "motor carrier" within the meaning of 49 C.F.R. Part 398.

Part 398 is titled "Transportation of Migrant Workers."  Its regulations apply only "to carriers of migrant workers by motor vehicle."  49 C.F.R. § 398.2(a).  Because nothing in the amended complaint remotely suggests that SGT was transporting three or more "individual[s] proceeding to or returning from employment in agriculture" at the time the Auray's vehicle was damaged, 49 C.F.R. § 398.1(a), (b), SGT could not have violated § 398.4(g)(1) and, in turn, cannot be held liable under § 14704(a)(2).  Count II is therefore dismissed as to SGT for failure to state a claim.

### C. Breach of Contract

In Count III, Chubb Indemnity alleges that SGT breached the Shipping Order Form by failing to secure "applicable bond and insurance coverage" and by failing to deliver the vehicle in good condition.  (Am. Compl. ¶¶ 44-45, ECF No. 9.)  At this stage of the proceeding, the court finds that these allegations are sufficient to state a claim for breach of contract under South Carolina law.  S. Glass & Plastics Co. v. Kemper, 732 S.E.2d 205, 209 (S.C. Ct. App. 2012) ("The elements for a breach of contract are the existence of the contract, its breach, and the damages caused by such breach.").  The court notes, however, that the Carmack Amendment would preempt this claim if it were later determined that SGT acted as a carrier with respect to the shipment of the Auray's vehicle.  Ward v. Allied Van Lines, Inc., 231 F.3d 135, 138 (4th Cir.

---

[4] The amended complaint incorrectly cites to "49 C.F.R. §392.14(g)" for this language. (Am. Compl. ¶¶ 25, 27, ECF No. 9.)

2000) ("The Carmack Amendment preempts a shipper's state and common law claims against a carrier for loss or damage to goods during shipment.").

## IV. CONCLUSION

For the reasons stated above, the court **GRANTS** SGT's motion to dismiss as to Count II and **DENIES** its motion as to Counts I and III.

It is therefore

**ORDERED** that SGT's motion to dismiss, document number 12, is granted in part and denied in part.

**IT IS SO ORDERED.**

                                            s/Henry M. Herlong, Jr.
                                            Senior United States District Judge

Greenville, South Carolina
August 31, 2023